NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| BRIONNE CUFF, | |
| Plaintiff. | Civ. No. 23-22823 (RMB-EAP) |
| v. | |
| DT DOUGLAS ZEE, et al., | **OPINION** |
| Defendants. | |

RENÉE MARIE BUMB, United States District Judge

Plaintiff Brionne Cuff, a pretrial detainee housed in Hudson County Jail in Kearny, New Jersey filed this civil rights suit under 42 U.S.C. § 1983, alleging 22 law enforcement officers engaged in a conspiracy to deprive him of his civil rights by his false arrest, imprisonment and prosecution, in retaliation for a prior lawsuit. Plaintiff submitted an application to proceed without prepayment of the filing fee ("IFP App.") under 28 U.S.C. § 1915(a) (Dkt. No. 1-1.) The IFP application establishes Plaintiff's financial eligibility to proceed without prepayment of the filing fee and will be granted.

**I.   *Sua Sponte* Dismissal**

When a person files a complaint and is granted IFP status, 28 U.S.C. § 1915(e)(2)(B) requires courts to review the complaint and *sua sponte* dismiss any

claims that are: (1) frivolous or malicious; (2) fail to state a claim on which relief may be granted; or (3) seek monetary relief against a defendant who is immune from such relief. Courts, however, must liberally construe pleadings that are filed pro se. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The legal standard for dismissing a complaint for failure to state a claim, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), is the same as that for dismissal under Federal Rule of Civil Procedure 12(b)(6). *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012). When considering a motion to dismiss, courts may begin by excluding legal conclusions in the complaint, which are not entitled to an assumption of truth and are not sufficient to state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556.)

## II. THE COMPLAINT

### A. Factual Allegations

Plaintiff brings suit against 22 law enforcement officers for incidents that occurred between March or April 2017 and February 2023. The complaint is

difficult to follow[1] but the Court discerns the following factual allegations. On or about April 15, 2017, Detective C. Kites stopped Plaintiff for an allegedly pretextual traffic violation. Kites sprayed pepper spray in Plaintiff's face while six other troopers watched[2] and then they omitted the pepper spray incident from their police reports. Plaintiff was charged with the possession of marijuana, but the charges were dismissed in Millville Municipal Court. Plaintiff sued Detective Kites and the other troopers who were present for the traffic stop (hereafter the "Millville Defendants"), and he received a settlement of $16,000.00, which has not been paid.

Plaintiff contends the Millville Defendants, who are present and past employees of the Metro South State Police Station in Vineland, New Jersey ("Metro South State Police"), conspired with fifteen law enforcement officers (the "State Police Defendants)[3] from Metro South State Police to engage in a harassing investigation of Plaintiff between July 2022 and approximately February 2023, leading to his false arrest, all in retaliation for Plaintiff's lawsuit over the 2017 incident.

---

[1] Plaintiff attached a number of exhibits to the complaint (Exhibits, Dkt. No. 2), which this Court has reviewed for a better understanding of the factual allegations and claims in the complaint.

[2] The Defendants who were allegedly involved in the April 15, 2017 excessive force incident are Detective C. Kites, Trooper Redraw, Trooper T. Heim, Trooper T. Spadafora, Sgt. C. Scowcroft, C. Eskridge, and DSG N. Nabinger.

[3] The State Police Defendants are Detective Douglas Zee, Trooper Walker, Trooper Flockhart, Trooper Henry, Trooper D'Angelo, Trooper Hauser, DSG Abdill, Sgt. Ayala, Trooper Ryba, Trooper Furlong, Sgt. R. Cartwright, Detective Straube, Trooper Haydak, Detective Quartucci and DSG Stewart.

Plaintiff alleges his brother-in-law, Adam Grissman, was targeted for investigation by the State Police Defendants. Plaintiff was implicated in the investigation because he had loaned Grissman his car and gave him rides. The State Police Defendants linked Plaintiff to the Grissman investigation based on Plaintiff's vehicle registration and identification of Plaintiff by "one DMU single photo." The investigation lasted six months and led to the search of four homes and three vehicles, based on a "rubberstamped" search warrant. According to Plaintiff, the search warrant was based on "threads of information obtained from a pseudo-informant whose "veracity, basis of knowledge and prior history is not supported by the Affidavit of Probable Cause only indicating that he is a confidential source." (Compl., Dkt. No. 1 at 17.) The alleged controlled buys were made with currency that was not registered, and the lab results of certain evidence was missing. Plaintiff found 23 discrepancies in Detective Zee's supplemental police report and affidavit of probable cause.

In December 2022, Plaintiff was pulled over and questioned by Trooper Flockhart and Trooper Henry, and this incident was omitted from discovery in Plaintiff's criminal prosecution. Trooper Hauser and Trooper Abdill retaliated against Plaintiff for his prior lawsuit by searching the home of his childrens' mother and by placing a GPS on his brother's Range Rover. The State Police "hierarchy" lied to bolster the affidavit of probable cause by stating the GPS tracking locations were believed to be narcotic transactions, but most of the locations were stop lights

4

and convenience stores.  None of the State Police Defendants witnessed a drug transaction.

Detective Zee alleged, through hearsay, that drug transactions were made from a BMW registered to Plaintiff.  Plaintiff alleges he could not have been identified through his car windows because they are tinted.  Plaintiff challenges his identification from a single photo viewed by a confidential source who allegedly knew Plaintiff.  Detective Zee's affidavit of probable cause allegedly inflated Plaintiff's criminal history from three felony convictions to five.

Plaintiff also challenges the veracity of Trooper Walker's surveillance of Plaintiff at 210 McNeil Street, where contraband was found, because the surveillance was reported by Detective Zee, and Walker did not make a police report.  At the conclusion of the investigation, Plaintiff was accused of conspiring with Adam Grissman by providing contraband drugs for sale.  In summary, Plaintiff alleges the 2022-2023 investigation by the State Police Defendants, including a search of his home without probable cause[4] and his false arrest, imprisonment and prosecution, constituted a conspiracy to retaliate against him for his lawsuit against the Millville Defendants for the 2017 excessive force incident.  Plaintiff further alleges he was treated differently than other similarly situated persons in violation of his Fourteenth Amendment right to equal protection, and his due process rights were violated by

---

[4] Plaintiff inconsistently alleges that the search of his home was conducted without a warrant and that the search of four homes and three vehicles was supported by a "rubberstamped" (Compl., Dkt. No. 1 at 17) search warrant.

omissions and inaccuracies in the police reports and the broken chains of custody of evidence against him.  For relief, Plaintiff seeks a criminal investigation of the defendants[5] and monetary damages.

### B. Affidavit of Probable Cause in Support of Search Warrant

In determining whether to dismiss a complaint under the Rule 12(b)(6) standard, applicable here, courts may consider exhibits attached to the complaint. Plaintiff attached to his complaint Zee's affidavit of probable cause in support of a search warrant for Plaintiff and his home at 186 Main St. Cedarville, among other residences and vehicles not belonging to Plaintiff.  (Dkt. No. 2 at 32-73.)[6]  Zee submitted there was probable cause to believe the persons, premises and vehicles to be searched would contain evidence of possession, distribution, and conspiracy to distribute CDS.  In support of probable cause, Zee alleged he learned of an individual known as Ten Trey, who was involved in distribution of CDS, including heroin, crack cocaine and methamphetamine, through a documented, reliable and credible

---

[5] District courts lack authority to initiate criminal investigations or prosecutions, a function of the executive branch. *Nicholas v. Heffner*, 228 F. App'x 139, 141 (3d Cir. 2007).

[6] Although Plaintiff alleges Defendants lacked probable cause to search the homes and vehicles of his family members, Plaintiff has not alleged any facts suggesting he has standing to bring Fourth Amendment claims on their behalf. See *United States v. Montalvo-Flores*, 81 F.4th 339, 342–43 (3d Cir. 2023) (describing expectation of privacy necessary for standing to bring Fourth Amendment unreasonable search claim).  The Court construes the complaint as alleging the search of vehicles and residences owned by his family members was in retaliation for his 2017 excessive force lawsuit.

confidential source ("CS1") in early 2022. From prior law enforcement experience, Zee knew Ten Trey was Adam Grissman, who was previously identified by other Metro South Station police officers as a narcotics distributor in Millville and Cumberland County.

CS1 identified Adam Grissman as Ten Trey from a color photograph that did not contain any personal identifying information. Zee learned of Grissman's criminal history, including drug distribution and related gun convictions, from a New Jersey criminal history database inquiry. Zee conducted surveillance of Grissman in Millville beginning in 2022. An undercover officer ("UC1"), on multiple occasions from July to December 2022, purchased substances suspected, and later confirmed by lab reports, to be heroin and crack cocaine from Grissman. Plaintiff was first linked to Grissman by Grissman's arrival at the undisclosed location of a controlled buy as a passenger in a black BMW. The BMW was registered to Plaintiff, whose address was 186 Main St., Millville, N.J. Zee was familiar with Plaintiff as a distributor of narcotics from his prior law enforcement experience. Zee ran Plaintiff's criminal history report and found five indictable convictions, including possession and distribution of controlled dangerous substances ("CDS") and prohibition of receiving or possessing a firearm.

In August 2022, Trooper Walker conducted surveillance of Plaintiff at the location of one of the controlled buys of CDS by UC1 from Grissman. Walker observed Plaintiff arrive at 210 West McNeal St., Millville, in his black BMW, walk to 131 West Foundry St, and return and enter the rear of the property at 210 West

McNeal St. after the controlled buy. On this occasion, UC1 observed Plaintiff supply Grissman with the substances UC1 purchased, which were later determined by a lab report to be a fentanyl mixture and cocaine.

Trooper Walker conducted surveillance of the BMW registered to Plaintiff when the car left the location of another controlled buy of CDS from Grissman in August 2022. Walker observed Plaintiff exit the vehicle and enter the back of 210 West McNeal St., Millville for about five minutes. Walker then observed Plaintiff enter the BMW and drive to another location, where Plaintiff entered a different vehicle. Walker observed Grissman enter and drive off in Plaintiff's BMW, which Walker followed and observed short meetings between Grissman and others, which appeared to be hand to hand narcotics transactions.

In September 2022, UC1 traveled with Grissman, in UC1's car, to 210 West McNeal St., Millville. There, UC1 observed Plaintiff hand Grissman a package of suspected CDS. UC1 was directed to another location, where Grissman arrived in the black BMW and sold UC1 an additional amount of what later was confirmed to be heroin. UC1 identified Grissman as the seller of CDS and Plaintiff as Grissman's supplier.

In November 2022, CS1 informed Zee he/she had been in contact with Plaintiff and could make heroin purchases from him. CS1 assisted the police investigation by participating in multiple controlled buys of heroin from Plaintiff, under constant, unobstructed surveillance, in November and December 2022. The controlled buys were followed by collection of evidence and

debriefings by the investigating officers. After several of the controlled purchases of CDS from Plaintiff by CS1, Zee and other Metro South troopers conducted extensive surveillance of Plaintiff. Plaintiff was observed making what was suspected to be hand to hand drug transactions, driving from location to location in Millville, N.J. in his BMW in early December 2022.

    During the week of December 12, 2022, CS1 conducted a controlled buy of suspected CDS from Plaintiff, who arrived and departed from the location of the sale in a blue Range Rover, which was registered to Romaine Cuff at 210 West McNeal St., Millville. Trooper Henry maintained constant surveillance of Plaintiff in the blue Range Rover after he left the location of the controlled buy. Plaintiff engaged in what appeared to be a hand to hand drug transaction within Millville City, and then drove to 210 West McNeal St., parked the Range Rover and entered the residence. The following week, another controlled buy of heroin was conducted by CS1 from Plaintiff. Plaintiff was under surveillance, and he was observed leaving 210 West McNeal St. in the blue Ranger Rover, and then departing the location of the controlled buy after it concluded. Trooper Henry maintained surveillance of Plaintiff and observed him engage in what appeared to be a hand to hand drug transaction out of the passenger side of the Range Rover in Millville City, and then drive to 186 Main St., Cedarville and enter the residence.

    During the week of December 26, 2022, CS1 conducted a controlled buy of suspected heroin from Plaintiff. CS1 and troopers who were conducting surveillance of Plaintiff saw him arrive at the location of the controlled buy driving a GMC

Sierra, which was determined to be registered to Amber Simmons. Using "various law enforcement databases" Zee linked Amber Simmons to Willie Simmons, who had a criminal history related to CDS distribution in South Jersey. Trooper Henry and Sergeants Ayala and Cartwright had observed Plaintiff engage in suspected narcotic transactions with a black male during the week of November 21, 2022. They were later able to identify that male from a driver's license photo as Willie Simmons.

In January 2023, several troopers observed Plaintiff enter the parked blue Ranger Rover at Plaintiff's residence at 186 Main St., Cedarville and drive the Range Rover. Also in January, Zee and Trooper Henry observed the GMC Sierra, registered to Amber, Simmons parked at Plaintiff's residence.

Also in January, Zee obtained a search warrant to place a GPS tracking device on the blue Range Rover. Zee described the GPS activity of Plaintiff driving the Range Rover to be consistent with short narcotics transactions in Millville on January 10 and 11, 2023. The GPS stopped working for unknown reasons on January 12. On January 12, Trooper Henry observed the Ranger Rover and a white Acura parked at 186 Main St., Cedarville. He also observed Plaintiff exit the residence and enter the Range Rover.

That month, a review of an ATS database showed Willie Simmons had recently received two motor vehicle summons while driving a white Acura which was registered to Wafia Money at 21 Ellis St., Bridgeton N.J. Troopers had previously observed this Acura parked at Plaintiff's residence at 186 Main St.,

Cedarville and at 21 Ellis St., Bridgeton. Troopers continued surveillance of the Acura, Range Rover and GMC Sierra and observed them coming and going from 186 Main St., Cedarville, 21 Ellis St. Bridgeton, and 210 West McNeal St., Millville.

On January 16, 2023, an anonymous concerned citizen, known to law enforcement, reported suspected drug transactions occurring at Plaintiff's residence, 186 Main. St., Cedarville. The concerned citizen described the resident as driving a black Range Rover. A black GMC truck arrived at the residence daily around 4 p.m. Suspected drug purchasers arrived by car, walked behind the residence, and engaged in hand to hand suspected narcotics transactions with the driver of the GMC truck. This activity had been going on for some time.

During the same week, Zee and another officer met with a known, reliable confidential source ("CS02"), who was very familiar with Willie Simmons as "the boss of bosses" for cocaine distribution in Cumberland County. Simmons had five to ten people to whom he distributed cocaine for resale. He was known to frequently drive the GMC Sierra truck registered to Amber Simmons.

## III.   DISCUSSION

### A.   Fourth Amendment Unreasonable Search and Seizure[7]

---

[7] Although Plaintiff names as defendants the officers involved in his 2017 traffic stop and arrest for marijuana possession, Plaintiff brought suit against these officers, resulting in a settlement. The 2017 incident is likely barred by res judicata and the two-year statute of limitations for § 1983 actions. Therefore, the Court construes Plaintiff as alleging only a § 1983 conspiracy claim against the Millville Defendants. The remainder of the claims alleged in the complaint involving the 2022-2023 investigation, the Court construes as brought against the State Police Defendants in their individual capacities for money damages.

To establish a Fourth Amendment unreasonable search claim under § 1983, due to invalidity of the search warrant based upon false statements contained in the affidavit of probable cause, a plaintiff must allege: (1) the affiant knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant; and (2) such statements or omissions are material, or necessary, to the finding of probable cause. *Pinkney v. Meadville, Pennsylvania*, 95 F.4th 743, 748 (3d Cir. 2024). To establish reckless disregard for the truth, based on all available evidence, "the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported.'" *Wilson v. Russo*, 212 F.3d 781, 788 (3d Cir. 2000) (quoting *United States v. Clapp*, 46 F.3d at 795, 801 n.6 (8th Cir. 1995)). Omissions, on the other hand, "are made with reckless disregard if an officer withholds a fact in his [range of knowledge] that '[a]ny reasonable person would have known [ ] was the kind of thing the judge would wish to know.'" *Wilson*, 212 F.3d at 789 (quoting *United States v. Jacobs*, 986 F.2d 1231, 1235 (8th Cir. 1993)).

Plaintiff has not alleged any facts suggesting Zee either entertained serious doubts about the truth of any of his statements in his affidavit of probable cause or that Zee had obvious reasons to doubt the accuracy of the information he reported. The affidavit of probable cause describes an extensive investigation involving months of surveillance of individuals with criminal histories of drug distribution, controlled buys of heroin and cocaine using both an undercover officer and a confidential source, in which Plaintiff was observed supplying and later purchasing CDS.

12

Although Plaintiff alleges he was identified only by a single photograph, Zee knew Plaintiff from prior law enforcement activities and identified Plaintiff while conducting surveillance in the months long investigation. Plaintiff alleges registered currency was not used for the controlled CDS purchases, but Plaintiff did not allege any facts suggesting Zee had any reason to believe the controlled CDS purchases were not conducted as Zee described in his affidavit, under constant, unobstructed surveillance. Plaintiff alleges none of the defendants witnessed any drug transaction. However, Zee's affidavit, viewed as whole, supports the conclusion that the transactions witnessed by defendants were drug transactions. Therefore, Zee was not reckless in stating so.

Plaintiff also alleges Zee omitted the fact that troopers pulled him over and questioned him during the investigation, but Plaintiff has not described what the troopers learned from the questioning. Thus, Plaintiff has not shown how this alleged omission is material to probable cause. In sum, Plaintiff has not alleged sufficient facts to state a Fourth Amendment unreasonable search claim against Zee because the allegations in the complaint do not support Zee's reckless disregard for the truth in his affidavit in support of the search warrant.

### B. First Amendment Retaliatory Arrest

The absence of probable cause is an element of a First Amendment claim of retaliatory arrest. *Nieves v. Bartlett*, 587 U.S. 391, 402 (2019). There is a narrow exception where a plaintiff is not required to plead facts showing lack of probable cause for arrest. *Gonzalez v. Trevino*, 602 U.S. 653, 653–55 (2024). For example, this

13

situation may arise where the plaintiff was the only person ever arrested for a specific type of conduct, although the conduct was historically prohibited. *Id.* at 258. In such a case, a plaintiff may allege there is objective evidence that he was arrested under circumstances where similarly situated individuals who were engaged in the same sort of protected speech were not arrested. Plaintiff alleges Defendants treated him differently from similarly-situated persons by investigating and arresting him but provides no explanation of this statement. This is insufficient to meet the narrow exception in support of a First Amendment retaliatory arrest claim.

The probable cause test is objective, and courts must consider all the facts within the arresting officer's knowledge and determine if a reasonable person would believe an offense was committed. *Orsatti v. N.J. State Police*, 71 F.3d 480, 483 (3d Cir. 1995). The facts alleged in Zee's affidavit, including the following, would cause a reasonable person to believe Plaintiff was engaged in CDS distribution: Plaintiff supplied Grissman with CDS for controlled CDS sales to UC1; Plaintiff sold heroin to CS1 in controlled transactions; Plaintiff's frequent meetings with Willie Simmons were indicative of Plaintiff's participation in drug distribution, and surveillance of Plaintiff was consistent with his participation in hand to hand drug transactions. Therefore, Plaintiff has not sufficiently alleged the probable cause element of First Amendment Retaliatory Arrest.

  **C.** **Fourth Amendment False Arrest, False Imprisonment and Malicious Prosecution**

Absence of probable cause is an element of § 1983 claims of false arrest, false imprisonment and malicious prosecution. *Groman v. Twp. of Manalapan*, 47 F.3d 628, 636 (3d Cir. 1995) (holding probable cause is an element of false arrest and false imprisonment claims); *Thompson v. Clark*, 596 U.S. 36, 43 (2022) ("the gravamen of the Fourth Amendment claim for malicious prosecution … is the wrongful initiation of charges without probable cause.")  For the reasons discussed above, the complaint does not plausibly allege the absence of probable cause to arrest and prosecute Plaintiff for drug charges.

### D.     Fourteenth Amendment Due Process and Equal Protection Claims

Plaintiff alleges defendants violated his right to equal protection under the Fourteenth Amendment because he is a member of a protected class and the investigation and his arrest were racially motivated.  The elements of an equal protection claim based on selective enforcement or racial profiling are (1) the police actions had a discriminatory effect and (2) the police actions were motivated by a discriminatory purpose. *Bradley v. United States*, 299 F.3d 197, 205 (3d Cir. 2002). Plaintiff has not alleged any facts to support his claim of either discriminatory effect or discriminatory purpose.  Therefore, the equal protection claim will be dismissed without prejudice.

Plaintiff alleges the State Police Defendants violated his right to due process by omissions and inaccuracies in the police reports and broken chains of custody of evidence against him.  Under the more-specific-provision rule, "if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth

Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *Porter v. Pennsylvania Dep't of Corr.*, 974 F.3d 431, 447 (3d Cir. 2020) (quoting *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997)). Plaintiff's allegations concerning the discrepancies, omissions, and chain of custody regarding evidence supporting the search of his home, his arrest and prosecution are covered by the Fourth Amendment claims addressed above. Therefore, the Court need not address Plaintiff's Fourteenth Amendment substantive due process claims.

### E.     Conspiracy under 42 U.S.C. § 1983

"To prevail on a conspiracy claim under § 1983, a plaintiff must prove that persons acting under color of state law 'reached an understanding' to deprive him of his constitutional rights." *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 293–94 (3d Cir. 2018) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150-52 (1970)). In addition, a plaintiff must allege a factual basis to support the existence of a conspiracy, including agreement and concerted action. *Id.* (citing *Capogrosso v. Supreme Court of N.J.*, 588 F.3d 180, 184–85 (3d Cir. 2009) (citing *Crabtree v. Muchmore*, 904 F.2d 1475, 1481 (10th Cir. 1990)). To establish agreement, a plaintiff must show that the defendants reached an understanding to deny Plaintiff of his rights, which can be shown by circumstantial evidence. *Id.* at 295 (citations omitted).

The circumstantial evidence of agreement alleged in the complaint is far too speculative to support the existence of an agreement. Plaintiff alleges that because he

sued seven officers from Metro South Station over a 2017 traffic stop and obtained an unpaid $16,000 settlement, fifteen different officers from Metro South Station targeted him in a drug conspiracy investigation in 2022. The approximately five years between the allegedly related incidents, the lack of overlapping defendants in Plaintiff's 2017 traffic stop and the 2022-2023 investigation, the fact that the initial target of the 2022-2023 investigation was Adam Grissman not Plaintiff, and the complexity of the 2022-2023 investigation of drug distribution against multiple suspects all detract from the plausibility of a conspiracy by 22 law enforcement officers to deprive Plaintiff of his civil rights. Therefore, the Court will dismiss the § 1983 conspiracy claim without prejudice.

## IV.   CONCLUSION

For the reasons stated above, the Court will grant Plaintiff's IFP application and dismiss the complaint without prejudice for failure to state a claim. Because the complaint will be dismissed, Plaintiff's application for pro bono counsel (Dkt. No. 5) will be denied without prejudice.

An appropriate Order follows.

Date: December 10, 2024          s/Renée Marie Bumb
                                 RENÉE MARIE BUMB
                                 CHIEF UNITED STATES DISTRICT JUDGE